# EXHIBIT 1

Shalini Dogra (SBN: 309024)
*shalini@dogralawgroup.com*
DOGRA LAW GROUP PC
2219 Main Street, Unit 239
Santa Monica, CA 90405
Telephone: (747) 234-6673
Facsimile: (310) 868-0170
*Attorneys for Named Plaintiff and Proposed Class*

Electronically FILED by Superior Court of California, County of Los Angeles 7/13/2026 12:00 AM David W. Slayton, Executive Officer/Clerk of Court, By A. Zadorian, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

REYA ARCHER, individually herself and on behalf of all others similarly situated;

Plaintiff,

v.

LOVE CORN USA; and DOES 1 through 50, Inclusive,

Defendants.

Case No: 26STCV21907

**PLAINTIFF'S CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Reya Archer individually and on behalf of all others similarly situated (the "Class" as defined below), by and through her undersigned counsel, brings this Class Action Complaint against Love Corn USA, Inc. ("LCU") and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, Plaintiff. As to all other matters, Plaintiff bases the allegations on information and belief, through investigation of her counsel. Plaintiff believes substantial evidentiary support exists for her claims, and she sees a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1. To capitalize on the premium price consumers are willing to pay for healthier foods, sugar-free versions of snacks and foods that lack the dangers of sugar, LCU intentionally makes false and misleading representations about its

2. "LOVE CORN® sour cream & onion" Product Line ("the Product") (*see photos below*).




**Ingredients made with LOVE:**
*non-gmo corn, high oleic sunflower oil, onion, salt, rice flour, sugar, parsley, citric acid, lactic acid, natural flavoring, garlic*

| | |
|---|---|
| Dietary Fiber 2g | 6% |
| Total Sugars 0g | |
| Includes 0g Added Sugars | 0% |

3. Through its uniform labelling and advertising claims, LCU misrepresents the Product's nutritional content, ingredients, benefits and value. The Product's nutritional panel states that the Product contains "0g added sugar," i.e. zero grams of added sugar. Yet, the Product's ingredient list clearly exhibits "sugar" as a component, and makes clear that sugars have unquestionably been added to the Product. In other words, the Product's ingredient list belies the nutritional panel and demonstrates that LCU has marketed the Product with a falsified nutritional panel and/or ingredient list. Hence, LCU deliberately has made and continues to make dishonest, deceptive and misleading claims and promises to consumers about the ingredients, health advantages and nutritional value of the Product in a pervasive, statewide and nationwide marketing scheme that falsely touts the benefits of the Product.

4. Based on the fact that Defendants' advertising misled Plaintiff and all others like them, Plaintiff brings this class against Defendants to seek reimbursement of the premium she and the Class Members paid due to Defendants' false and deceptive representations about the serving size, health impact and nutrient content levels of the Product.

5. Plaintiff seeks damages, other monetary relief, declaratory relief, and an order enjoining Defendants from continuing their false and misleading marketing of the Product.

6. As described more fully below, consumers who purchased the Product were injured by LCU's acts and omissions concerning Products' ingredients. No reasonable consumer would know, or have reason to know, that the Product contained added sugars or lacked the health benefits

LCU advertised. Plaintiff would not have purchased the Product, bought as many bags of the Product, or paid as much for the Product had LCU marketed the Product transparently and represented the Product's composition accurately.

7. Plaintiff brings this action against LCU on behalf of herself, similarly-situated Class Members, and the general public to enjoin LCU from deceptively marketing the Product, and to recover compensation for injured Class Members.

## PARTIES

8. Plaintiff is a resident of California. She purchased falsely advertised units of the Product in California during the relevant time period.

9. LCU is a corporation headquartered in California, New Jersey and Delaware. LCU manufactures, mass markets, and distributes the Product throughout California, New York and the United States.

10. Plaintiff is informed and believes, and based thereon alleges that at all times relevant herein each of these individuals and/or entities was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

11. Plaintiff reserves her right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

12. Plaintiff brings this action pursuant to Cal. Civ. Proc. Code §382 and Cal. Civ. Code §1781. This Cout has personal jurisdiction over LCU because LCU is a foreign entity authorized to do business in California and has sufficient minimum contacts with the State or otherwise intentionally avails itself of the laws and markets of California, through the distribution and sales

of the Product in California, to render the exercise of jurisdiction by the California courts permissible. Similarly, this Court has subject matter jurisdiction pursuant to the California Constitution, Article XI, §10 and California Code of Civil Procedure §410.10, because LCU transacted business and committed the acts alleged in California. The Named Plaintiff and Class Members are citizens and residents of California.

13. LCU's activities in California give rise to the claims identified herein, both suffered by Plaintiff and members of the proposed Class. LCU has introduced the Product into the stream of commerce in California, including units of the Product purchased by Plaintiff and the Class, each of which give rise to the claims of Plaintiff.

14. Venue is proper in this Court because LCU has conducted business and entered into transactions in this Coury, and the conduct at issue occurred in, and/or emanated from, in part, this Court. Moreover, venue is proper in this County pursuant to California Civil Code §1780(c) because LCU has numerous principal places of business and distribution centers in California, including Los Angeles County. Additionally, LCU conducts significant business here, engages in substantial transactions in this County, and because many of the transactions and material acts complained herein occurred in this County, including specifically, the transactions between Plaintiff and LCU and many of the transactions between LCU and the putative class. Venue is proper in this Court because LCU receives substantial compensation from sales in Los Angeles County, and LCU made numerous misrepresentations which had a substantial effect in Los Angeles County.

15. Pursuant to *Swearingen v Late July Snacks*, Ms. Archer reserves the right to broaden her proposed class to cover other misbranded snack food manufactured by LCU that perpetuate similar violations as asserted herein, and maintains standing for such unpurchased good and items that have "sufficient similarity" to the Product. *Swearingen v. Late July Snacks LLC*, 2017 U.S. Dist. LEXIS 170928, at *15-16 (N.D. Cal. Oct. 16, 2017).

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

16. Reasonable consumers rely on product labelling in making their purchasing decisions.

17. Various studies and data affirm the materiality of Plaintiff's challenged claims. Consumers perceive products that are naturally flavored to be healthier. L. Dornblaser, *Colors and flavors help drive consumer trend of health*, FOOD AND BEVERAGE INSIDER (Sept. 20, 2022). Moreover, eighty-eight percent of consumer are willing to pay more for healthier foods. N. Gagliardi, *Consumers Want Healthy Foods—And Will Pay More For Them*, FORBES (Feb. 18, 2015). And LCU know this. Likewise, LCU knew or had reason to know that consumers would find the challenged attributes important in their decision to purchase the Product, as indicated by the fact that Defendants repeatedly emphasizes the advertised claims prominently on the Product's packaging. However, Defendants' labelling and marketing scheme for the Product is false.

18. Defendants understand that obesity, non-alcoholic fatty liver disease, and diabetes are rising health epidemics and that consumers, concerned about their health and appearance, are willing to pay more for products with reduced calories and carbohydrate levels. Likewise, market studies have found that the global demand for ketogenic food products will reach $12.35 billion in 2024, with an annual growth rate of 5.3% between 2021 and 2024. Roberts, Tobias, "*Keto Diet Market Growth Forecasts for 2021-2024*," BUSINESS STATISTICS (Feb. 22, 2023). Hence, claims about foods having zero added sugars are important to individuals. Accordingly, Defendants have embarked on a long-term advertising campaign to mislead the public into believing that the Product is healthier alternatives to other food snacks, with purportedly zero added sugars.

19. 21 U.S.C. § 343 states that a food product is misbranded if "its labelling is false or misleading in any manner, if it is offered for sale under the name of another food," or if it is an imitation of another food." Similarly, under California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), Article 6, Section 110660, "Any food is misbranded if its labelling is false or misleading in any particular." Additionally, the FDA requires the nutritional panel of each food item sold within the stream of interstate commerce to explicitly disclose the amount of "added sugars" in the food. *See* 21 C.F.R. 101.9. Moreover, the agency expressly defines "added sugar" as "sugar that is added to foods during processing or sugar packaged for consumers to add to food and beverages on their own."

20. Here, the Product's ingredient list clearly affirms that "sugar" is a component of the snack food. Pursuant to the relevant FDA regulations, the agency undoubtedly considers sugar to be a type of sugar. Likewise, the FDA classifies the inclusion of sugar a form of "added sugar." That is, since LCU utilizes sugar to manufacture the Product, the snack food unquestionably contains "added sugars." And yet, the Product's nutritional panel patently misreport the amount of added sugars to be zero.

21. Under the federal Food, Drug and Cosmetics Act ("FDCA"), an inaccurate nutritional panel (such as the one LCU systematically advertises directly throughout the Product's packaging scheme and every bag of the snack food) constitutes a form of proscribed misbranding. California's Sherman law has adopted the FDA's approach to misbranding. Thus, the advertising and packaging scheme LCU uniformly and continuously perpetuates for all units of the Product reflects prohibited misbranding under both federal and California law. Notably, since the Sherman Law does not conflict with the FDCA, no preemption issues would affect this matter.

22. Even though the Product's ingredient lists and nutritional panels are displayed in the same area of the snack food's' packaging, for various reasons, LCU is still liable for violations of California and federal law here. First off, the font that LCU uses for the Product's ingredient list is not as big or as visible as the type utilized for the Product's nutritional panel. That is, the nutritional panel will catch a reasonable consumer's eye more quickly, and the ingredient list will likely remain illegible to most individuals and member of the general public. Moreover, LCU's placement of the ingredient lists and nutritional panels on the Product's packaging does not absolve LCU's violations of California's Unfair Competition Law ("the UCL," Cal. Bus. & Prof. Code §§ 17200 *et seq.*) Here, LCU's predication violations include the corporation's failure to comply with the FDCA and the Sherman Law. Thus, a court has authority to award restitution for violations of the UCL without individualized proof of deception, reliance or injury if "[the court] determines that such a remedy is necessary' to prevent the use or employment' of the unfair practice." *Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442, 453. Furthermore, the UCL and precedent law collectively entitle Plaintiff here to seek monetary and injunctive relief from LCU.

23. LCU's misrepresentations about the Product's composition occur uniformly and directly on the Product's labels. Hence, LCU's false marketing scheme about the Product transpires systematically and pervasively across all units of the Product that LCU sells in California and United States.

24. At all relevant times, Defendants packaged, advertised, marketed, distributed and sold the Product to consumers at retail store locations throughout California and the United States based on the misrepresentations and false labelling detailed throughout the instant complaint. In reality, the Product does not confer any of their advertised purported nutritional and health benefits to consumers.

25. Plaintiff purchased at least two units of the Product in California in or around December 2024. Plaintiff reasonably made her purchasing decision based upon the challenged advertised claims prominently displayed throughout the Product's packaging, labelling and nutritional panel. Plaintiff purchased units of the Product without knowledge of fact that the Product perpetuated a misbranded advertising and packaging scheme. Plaintiff used her units of the Product as instructed and would not have purchased them if she had known that the Product's packaging, labelling and advertising as described herein were false, misleading, and deceptive. Plaintiff suffered injury in fact as is entitled to restitution damages in an amount to be determined at trial. In reliance on LCU's misleading marketing and deceptive advertising practices of the Product, Plaintiff and similarly situated class members were deceived into purchasing bags of snack food they would otherwise would not have purchased or would have bought for a different price. Neither Plaintiff nor any of the member of the putative class received any of the health benefits, nutritional value or food composition they reasonably thought they were buying. Similarly, neither Plaintiff nor Class Members received units of the Product or a quality of snack food commensurate with what they reasonably expected to receive. Consequently, consumers are consistently misled into purchasing the Product for the commonly known and/or advertised benefits and characteristics when in fact no such benefits could be conferred by the Product.

26. Plaintiff is a "consumer" as defined under the CLRA. She purchased units of the Product from retail locations in California in 2024 and throughout the relevant time period. Plaintiff

reasonably made her purchasing decision based upon the challenged packaging and labelling and advertising claims prominently displayed on the Product's labelling and packaging scheme.

27. Reasonable consumers rely on product labelling in making their purchasing decisions. When a consumer sees a food item labelled as having no added sugars, s/he reasonably concludes that no sugars have been added as an ingredient to the food's composition or manufacturing process. In reliance on Defendants' misleading marketing and deceptive advertising practices for the Product, Plaintiff and similarly situated class members reasonably thought they were purchasing a food that lacked added sugars as an ingredient and that provided the nutritional benefits that come with consuming less added sugar. In fact, neither Plaintiff nor any of the member of the putative class received any of the health benefits, nutritional value or food composition they reasonably thought they were buying.

28. Plaintiff and other consumers purchased the Product because they reasonable believed, based on Defendants' packaging and advertising that the Product provided certain health benefits and helped avoid particular physiological harms, including the detriments typically associated with conventional sugar. Had Plaintiff and other consumers known that the Product actually contained added sugars, they would not have purchased the Product or would have paid significantly less for it. As a result, Plaintiff and other similarly situated class members have been deceived and suffered economic injury.

29. Defendants' labelling, marketing and advertising uniformly involves multiple false and misleading statements, as well as material omissions of fact, concerning the Product that have injured Plaintiff and the class by tricking them into buying a food item that is entirely different from what they sought at the time of purchase.

30. During the time when they were purchasing and consuming the Product, Plaintiff did not take steps to verify the Product's components or nutrient levels. Reasonable consumers such as Plaintiff would not have considered it necessary to verify the clear message conveyed by Defendants' labelling, advertising, marketing and packaging of the Product.

31. Plaintiff would consider purchasing the Product again if the labelling were accurate.

32. Plaintiff purchased units of the Product throughout the covered time period, including throughout 2024, from a brick-and-mortar locations in California. Plaintiff reasonably made her purchasing decision based upon the challenged advertised claims prominently displayed on the Product's packaging. Plaintiff purchased her units of the Product without knowledge of fact that the Product actually contained added sugars as an ingredient. Plaintiff used her units of the Product as instructed and would not have purchased them if she had known that the Product's packaging, labelling and advertising as described herein were false, misleading, and deceptive.

33. Prior to purchasing the Product, Plaintiff and the Class members were exposed to, saw, read, and understood the labels of the Product, and relied upon the same in purchasing the Product. As a result of LCU's deceptive advertising about the Product's composition, Plaintiff and the Class members reasonably believed the Product lacked added sugars as ingredients. Plaintiff and the Class members purchased the Product in reliance upon LCU's misleading labels that contained omissions. Had Plaintiff and the Class known that the Product contain added sugars and fail to provide the marketed health benefits, they would not have been willing to purchase the Product or would have paid less for them. Thus, as a direct and proximate result of LCU's deceptive advertising scheme for the Product, including the Product's composition, Plaintiff and the Class Members purchased the Product and paid more for the Product than it was worth. Likewise, Plaintiff and the Class Members were harmed in the form of the moneys they paid for the Product which they otherwise would not have paid had they known the truth about the Product.

34. LCU knew or should have known that Plaintiff and the Class Members would rely upon the packaging and marketing of the Product, and intended for them to do so, but failed to advertise the Product's components in an accurate, non-misleading and non-deceptive manner.

35. Plaintiff and the Class Members were harmed in the form of the monies they paid for the Product which they would not otherwise have paid had they known the truth about the Product's ingredients

36. By use of its misleading labelling, LCU created increased marketplace demand for the Product, and increased their market share, relative to what their demand and share would have been had LCU labelled the Product in a non-deceptive and non-misleading manner.

37. Plaintiff lost money as a result of LCU's deceptive claims and practices in that she did not receive what she paid for when purchasing the Product. Additionally, Plaintiff detrimentally altered her position and suffered damages in an amount equal to what she paid for the Product, or at least some portion thereof.

38. Plaintiff purchased units of the Product in California throughout the relevant time period. Plaintiff reasonably made her purchasing decision based upon the challenged advertised claims prominently displayed throughout the Product's packaging, advertising and labelling. Plaintiff purchased units of the Product without knowledge of fact that the Product perpetuated a misbranded advertising and packaging scheme. Plaintiff used her units of the Product as instructed and would not have purchased them if she had known that the Product's packaging, labelling and advertising as described herein were false, misleading, and deceptive. In reliance on LCU's misleading marketing and deceptive advertising practices of the Product, Plaintiff and similarly situated class members were deceived into purchasing bags of food they would otherwise would not have purchased or would have bought for a different price. Neither Plaintiff nor any of the member of the putative class received any of the health benefits, safety, freedom from risk of harm, or food composition they reasonably thought they were buying. Similarly, neither Plaintiff nor Class Members received units of the Product or a quality of food commensurate with what they reasonably expected to receive. Consequently, consumers are consistently misled into purchasing the Product for the commonly known and/or advertised benefits and characteristics when in fact no such benefits could be conferred by the Product.

39. Plaintiff and the Class lost money as a result of LCU 's omissions and unfair practices in that they did not receive what they paid for when purchasing the Product.

40. Plaintiff would purchase the Product in the future if, because of an injunction requiring LCU to market the Product's true composition accurately, when presently she could be assured, by the absence of a disclosure, that the Product's advertisements represent the food's components accurately. But unless LCU is enjoined in the manner Plaintiff requests, she may not be able to reasonably determine LCU's deceptive advertising of the Product has been addressed. Plaintiff's substantive right to a marketplace free of fraud, where she is entitled to rely with

confidence on representations such as those made by, continues to be violated every time Plaintiff is exposed to the Product's packaging scheme and labels.

41. LCU's unfair business practices that result in the deceptive advertising of the Product's composition should also be enjoined. Absent such an injunction, Plaintiff cannot be assured that LCU has stopped this unfair business practice of the Product's deceptive labelling scheme.

42. Plaintiff's legal remedies are inadequate to prevent these future injuries. Additionally, in reliance on LCU's misleading marketing and deceptive advertising practices of the Product, Plaintiff and similarly situated class members were deceived into purchasing bags of the Product they would otherwise would not have purchased or would have bought for a different price. Neither Plaintiff nor any of the member of the putative class received any of the benefits, or value they reasonably thought they were buying. Similarly, neither Plaintiff nor Class Members received units of the Product or a quality of snack food commensurate with what they reasonably expected to receive. Consequently, consumers are consistently misled into purchasing the Product for the commonly known and/or advertised benefits and characteristics when in fact no such benefits could be conferred by the Product. Furthermore, as affirmed by relevant case law, Plaintiff has standing to seek injunctive relief and unjust enrichment.

43. The representations being challenged by Plaintiff herein are material to reasonable consumers (including her), in deciding to buy the Product. Specifically, LCU's advertising and marketing scheme about the Product lacking added sugars as an ingredient are important to consumers and motivates them to buy the Product. In deciding to buy the Product, Plaintiff and Class Members reasonably relied on these challenged misrepresentations, including the misleading images and statements that accompanied the Product's deceptive advertising. As described throughout the instant complaint, the Product's advertising scheme is false since the snack food actually contain added sugar ingredients. Consumers, including Plaintiff, do not know and have no reason to know, at time of purchase, that the Product's representations are false, misleading, deceptive and unlawful. Class Members and Plaintiff do not work for LCU, and hence have no personal knowledge of the actual ingredients used to make the Product or how the Product's

ingredients are manufactured. Additionally, average individuals lack the expertise or heightened specialized knowledge that a chemist would possess. Thus, reasonable consumers, such as Plaintiff, cannot tell from looking at a food item whether it contains added sugars as an ingredient. In contrast, LCU knew or should have known that the Product's challenged misrepresentations are false, misleading, deceptive, and unlawful, at the time LCU manufactured, marketed, advertised, labelled and sold the Product to Plaintiff and Class Members. LCU purposely and deliberately used a labelling scheme with the challenged misrepresentations, to cause Plaintiff and similarly-situated Class Members to believe the challenged claim as true and purchase the Product. Consequently, Plaintiff and Class Members purchased units of the Product they otherwise would not have bought, overpaid a price premium for the Product and bought units of the Product to their detriment.

44. Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Product more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

45. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes LCU's overall unfair marketing scheme to promote and brand the Product, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. The UCL also includes an "unlawful prong." This is important here because Plaintiff alleges that LCU failed to comply with federal state regulations regarding the labeling of foods. Thus, Plaintiff's unlawful- prong UCL claim is different than the CLRA in that it provides a different type of allegation and provides a different type of relief than other claims. There is not adequate remedy at law for Plaintiff's unlawful prong UCL claim. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

46. A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because LCU continues to misrepresent the Product's composition and continues to market the Product with the misrepresentations and false labelling scheme that Plaintiff has identified herein. Injunctive relief is necessary to prevent LCU from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Product that has resulted from years of LCU's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Product actually contain added sugars as an ingredient. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by LCU's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

47. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be

presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## RELIANCE AND ECONOMIC INJURY

48. When purchasing units of the Product, Plaintiff sought a food item that lacked added sugars.

49. Plaintiff red and relied on Defendants' false and misleading labeling in purchasing units of the Product, including the representation that the snack food lacked added sugars.

50. Plaintiff would not have purchased units of the Product absent these misrepresentations.

51. Instead of receiving a product that lacked added sugars, Plaintiff received a food that actually contained added sugars, such as sugar.

52. Plaintiff lost money as a result of Defendants' deception because Plaintiff did not receive the product she sought to purchase.

53. Plaintiff altered her position to her detriment and suffered damages as a consequence of purchasing units of the Product.

54. Plaintiff would purchase units of the Product again in the future, should the product have the nutritional value and composition and ingredients, that Defendants advertise and label.

55. By engaging in the false and misleading marketing set forth herein, Defendants reaped, and continue to reap, increased sales and profits.

56. Defendants are familiar with marketing research and know that many of their customers purchase the Product because they believe that the Product is made without usage of added sugars as an ingredient. Defendants know this quality is material to a consumer's decision to purchase the Product.

57. Defendants deliberately capitalize on foreseeable consumer misconceptions about the Product's claims in their marketing and sales scheme.

///

///

## CLASS ACTION ALLEGATIONS

58. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Cal. Civil Proc. Code § 382 and Cal. Civ. Code § 1781, Plaintiff seeks to represent a class of all persons in California, who, at any time between February 5, 2021, to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or redistribution, the Product.(the "Class").

59. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide a substantial benefit to the parties and Court.

60. Plaintiff brings this action individually and on behalf of a proposed class (the "Injunctive Relief Class") defined as follows:

> **The Injunctive Relief Class.** All persons residing in the California and its territories who have purchased a unit of the Product for their own use (which includes feeding their families), and not for resale since February 5, 2021. Plaintiff asks the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class; the Injunctive Relief Class does not seek any form of monetary relief.

61. Additionally, Plaintiff brings this action individually and on behalf of a proposed class (the "Monetary Relief Class") defined as follows:

> **The Monetary Relief Class.** All persons residing in the State of California and its territories who have purchased units of the Product for their own use (which includes feeing their families), and not for resale, since February 5, 2021. Plaintiff asks the Court to adjudicate all remedies through the Monetary Relief Class.

62. Collectively, the Injunctive Relief, and. the Monetary Relief are the "Class" or the "Classes."

63. Excluded from the Class are: (a) Defendants, Defendants' board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediately family, and the Court staff; and (d)

any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

64. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as individual Class Members would use to prove those elements in individual actions alleging the same claims.

65. **Numerosity**. The Class each consists of many thousands of persons, throughout the State of California, as appropriate. Each Class is so numerous that joinder of all members is impracticable, and the disposition of each Class's claims in a class action will benefit the parties and the Court.

66. **Commonality and Predominance**. Common questions of law and fact predominate over any questions affecting only individuals Class members. These common questions have the capacity to generate common answers that will drive resolution of this action. These common questions include, but not limited to, the following:

a. Whether Defendants contributed to, committed, or are responsible for the conduct alleged herein;

b. Whether Defendants conduct constitutes the violations of law alleged herein;

c. Whether Defendants acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein;

d. Whether Plaintiff and the Class Members are entitled to injunctive relief;

e. Whether Plaintiff and the Class members are entitled to restitution and damages.

67. Because they saw the name, labeling and marketing of the Product, and because they purchased units of the Product, all Class Members were subject to the same wrongful conduct.

68. Absent Defendants' material deceptions, misstatements, and omissions, Plaintiff and the other Class Members would not have purchased units of the Product.

69. **Typicality**. Plaintiff's claims are typical of the claims of the Class because Plaintiff and the other Class Members all purchased units of the Product and were injured thereby. The claims

of Plaintiff and the Other Class Members are based on the same legal theories and arise from the same false and misleading conduct.

70. **Adequacy of Representation.** Plaintiff is adequate representative of the Class because her interests do not conflict with those of the other Class members. Each Class member seeks damages reflecting a similar and discrete purchase, or similar and discrete purchases, that each Class member made. Plaintiff has retained competent and experienced class action counsel who intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the Class Members' interests.

71. **Injunctive or Declaratory Relief.** The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

72. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The amount at stake for each Class member, while significant, is such that individual litigation would be inefficient and cost-prohibitive. Additionally, adjudication of this controversy a s a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein. Plaintiff anticipates no difficulty in the management of this action as a class action.

73. **Notice to the Class.** Plaintiff and her counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## FIRST CAUSE OF ACTION

**Violation of Cal. Civ. Code §§1750, *et seq.***

**(On behalf of Plaintiff and Class Against All Defendants)**

74. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

75. The CLRA prohibits deceptive practices in connection with the conduct of a business

that provides goods, property, or services, primarily for personal, family or household purposes. Similarly, the CLRA adopts a statutory scheme that prohibits various deceptive practices in connection with the conduct of a business providing goods, property or services primarily for personal, family or household purposes. Additionally, under California Civil Code § 1770, "a defendant has a duty to disclose under [the CLRA} when the fact is known to the defendant and the failure to disclose it is misleading in light of other facts that the defendant did disclose." *Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 1258 (2018).

76. LCU's false and misleading labelling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes. LCU's policies, acts and practices were designed to, and did, result in the purchase and use of the Product primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA: Sections 1770(a)(2); 1770(a)(5); 1770(a)(7); 1770(a)(9); and 1770(a)(16). LCU's false and misleading labelling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA: §1770(a)(5)("representing that goods have characteristics, uses, or benefits which they do not have; §1770(a)(7)("representing that goods are of a particular, standard, quality or grade if they are of another"); §1770(a)(9)("advertising goods with intent not to sell them as advertised; and; §1770(a)(16)("representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.")

77. LCU profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers. As a result, in accordance with Cal. Civ. Code section 1780(a)(2), Plaintiff and members of the Class have suffered irreparable harm and are entitled to equitable relief in the form of an order: (a) enjoining LCU from continuing to engage in the deceptive practices described above; (b) requiring LCU to make full restitution of all monies wrongfully obtained as a result of the conduct described above; (c) requiring LCU to disgorge all ill-gotten gains flowing form the conduct described above; (d) requiring LCU to provide public notice of the true nature of the Product, including the Product's true composition; and (e) finding that LCU willfully and

knowingly violated the CLRA.

78. LCU's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

79. Pursuant to California Civil Code §1782, more than 30 days before filing this complaint, Plaintiff sent written notice of her claims and of LCU's particular violations of the Act to LCU by certified mail, return receipt requested, but LCU has failed to implement remedial measures.

80. Plaintiff and the Class have suffered harm and seek (a) actual damages resulting from purchases of the LCU Products sold throughout the Class Period to all Class Members, (b) punitive damages, (c) injunctive relief in the form of modified advertised and corrective advertising plan, (d) restitution, and (e) attorneys' fees and costs. See Cal. Civ. Code §1782(d). Additionally, pursuant to Civil Code § 1780(a), Plaintiff and members of the Class seek compensatory damages, punitive damages, restitution, disgorgement of profits, and an order enjoining LCU from deceptively marketing the Product, and pray for relief as set forth below.

## SECOND CAUSE OF ACTION

**Violation of California Business & Professions Code §§ 17500, *et seq.***

**(On behalf of Plaintiff and Class Against All Defendants)**

81. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

82. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §17500. California's False Advertising Law, Cal. Business & Profession's Code sections 17500 and 17508 proscribe "mak[ing] any false or misleading advertising claim." Moreover, it is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by

the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

83. As alleged herein, LCU, in its labelling of the Product, makes "false [and] misleading advertising claim[s]," as it deceives consumers about the ingredients and composition of the Product. Further, LCU misleads consumers about the true qualities, benefits and characteristics of the Product.

84. Plaintiff suffered injury in fact as a result of LCU's actions as set forth herein because Plaintiff purchased units of the Product in reliance on LCU's false and misleading marketing claims about the Product. In reliance on LCU's false and misleading advertising claims about the Product's ingredients, Plaintiff and Class Members purchased and used the Product without knowledge that the Product had a higher amount of added sugars than LCU advertised.

85. LCU's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because LCU has advertised the Product in a manner that is untrue and misleading, which LCU knew or reasonably should have known. LCU knew or should have known that its labelling and marketing was likely to deceive consumers about the Product's benefits, characteristics, quality and composition.

86. LCU profited from the sale of the falsely and deceptively advertised Products to unwary customers.

87. As a result, Plaintiff, and the Class, and the general public are entitled to injunctive and equitable relief, and an order for the disgorgement of the funds by which LCU was unjustly enriched. Additionally, Plaintiff and Class Members are entitled to restitution, and pray for relief as set forth below.

88. Pursuant to Cal. Bus. & Prof. Code §17535, Plaintiff, on behalf of herself and the Class, seeks and order enjoining LCU from continuing to engage in deceptive practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

89. Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA, and restitution is not limited to returning to Plaintiff and Class Members monies in which they have an interest, but more broadly serves to deter the offender and others from

future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

## THIRD CAUSE OF ACTION

**Violation of Business & Professions Code § 17200, *et seq*.**

**(On behalf of Plaintiff and Class Against All Defendants)**

90. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

91. The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

92. Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

93. The acts, omissions, misrepresentations, practices, and non-disclosures as of the alleged herein constitute business acts and practices.

**A. "Unfair" and "Fraudulent" Prongs**

94. LCU's conduct within respect to the labelling, advertising and sale of the Product was unfair because LCU's conduct was immoral, unethical, unscrupulous or substantially injurious to consumers, and the utility of LCU's conduct, if any, does not outweigh the gravity of the harm to their victims.

95. The acts, omissions, misrepresentations, practices and non-disclosures of LCU, as alleged herein constitute "fraudulent" business acts and practices, because LCU's conduct is false and misleading to Plaintiff and members of the Class.

96. LCU's labelling and marketing of the Product is likely to deceive Class Members about the value of the Product, including the Product's inclusion of added sugars as an ingredient.

97. LCU knew or reasonably should have known that the name of and other statements on the packaging, labels and other marketing of the Product were likely to deceive consumers.

98. In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining LCU from continuing to conduct business through unlawful, unfair, and/or

fraudulent acts and practices and to commence a corrective advertising campaign.

99. Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition, and pray for relief as set forth below.

100. Notably, courts have found and repeatedly affirmed that unfair competition includes deceptive or false advertising. *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 213-214 (1983)

101. LCU profited from the sale of the falsely, deceptively and unlawfully advertised Products to unwary consumers.

102. Plaintiff and Class Members are likely to continue to be damaged by LCU's deceptive trade practices because LCU continues to disseminate misleading information. Thus, injunctive relief enjoying LCU's practices is proper.

103. LCU's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of LCU's unlawful conduct.

104. Because Plaintiff's claims under the "unfair" prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of LCU's challenged behavior.

**B. "Unlawful" Prong**

105. California Business & Professions Code section 17200 ("UCL") prohibits any "unfair, unlawful or fraudulent business act or practice."

106. The acts, omissions, misrepresentations, practices, and non-disclosures of LCU, as alleged herein, constitute "unlawful" business acts and practices in that they violated the FDCA, and its implementing regulations, including but not limited to the sections identified below and throughout this complaint: (a) 21 U.S.C. § 343 states that a food product is misbranded if "its labelling is false or misleading in any manner, if it is offered for sale under the name of another food," or if it is an imitation of another food." Similarly, under California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), Article 6, Section 110660, "Any food is misbranded if its labelling is false or misleading in any particular."

107. As set forth herein, LCU's labelling and marketing of the Product are "unlawful" under the UCL in that they violate at least the following laws: The FDCA and the correlative mandates of California's Sherman Law, the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et. seq.*, and the False Advertising Law, *Cal.* Bus. & Prof. Code §§ 17500, *et. seq.*

108. By violating these laws, LCU has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

109. Each of the challenged statements made and actions taken by LCU violate the FDCA, federal regulations, the CLRA, the FAL and the Sherman Law, and therefore violate the "unlawful" prong of the UCL.

110. LCU leveraged its deception to induce Plaintiff and Class Members to purchase products that were of a lesser value and had different characteristics than advertised.

111. LCU's deceptive advertising caused Plaintiff and members of the Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase the Product over other food snack food. Had Plaintiff and Class Members been aware of LCU's false and misleading advertising tactics, they would not have purchased the Product at all, would have purchased fewer bags of the Product or would have paid less than what they did for the Product.

**<u>FOURTH CAUSE OF ACTION</u>**

**Breach of Express Warranty**

**(On behalf of Plaintiff and Class Against All Defendants)**

112. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

113. The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise, including a description of goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

114. At the time Plaintiff, and each Class Member purchased the Product, they formed a contract with LCU. The terms of that contract included the promises and affirmations of fact made by LCU on the Product's labels and through LCU's marketing and advertising tactics, as described

above. LCU expressly warranted that the Product, amongst other things, were free from added sugar ingredients, and Plaintiff placed importance on LCU's claims. LCU's claims constitute an affirmation of fact that became a part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. The Product's labeling and advertising constitute an express warranty, because they are part of the basis of that bargain, and are part of a standardized contract between Plaintiff and The Class Members on one hand, and LCU on the other.

115. All conditions precedent to LCU's liability under this contract have been performed by Plaintiff and the Class.

116. LCU breached the terms of this contract with Plaintiff and the Class, including the express warranties, by failing to provide a food product that can perform as advertised.

117. LCU is in privity with Plaintiff and the Class Members by selling directly to members of the public, and by warranting the Product to them directly or through the doctrine of agency.

118. Plaintiff and the Class Members were injured as a direct and proximate result of LCU's breach because Plaintiff and the Class would not have bought the Product if they had known the truth regarding the ingredients and composition of the Product. Plaintiff and the Class paid for the Product in reliance on LCU's mislabeling and the Product did not have the promised quality, effectiveness, or value. Consequently, Plaintiff and the Class have been damaged.

## <u>FIFTH CAUSE OF ACTION</u>

**Breach of Implied Warranty of Fitness for a Particular Purpose**

**(On behalf of Plaintiff and Class Against All Defendants)**

119. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

120. LCU, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Product are merchantable as a premium authentic food snack that is free from added sugars.

121. LCU breached the warranty implied in the contract for the sale of the Product because the Product could not "pass without objection in the trade under the contract description," were not

"of fair average quality within the description," were not "adequately contained, packaged, and labeled as the agreement may require," and did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2). As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by LCU to be merchantable.

122. The Product was not altered by Plaintiff or Class Members. The Product was defective when it left the exclusive control of LCU. Moreover, LCU knew that the Product would be purchased and used without additional testing by Plaintiff and Class Members.

123. The Product is defectively designed and unfit for its intended purpose and Plaintiff and Class Members did not receive the goods as warranted.

124. As a direct and proximate cause of LCU's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the Product if they knew the truth about the Product and the Product they received were worth substantially less than the snack food they were promised and expected.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the member of the Class, respectfully request the Court to enter an Order:

A. Certifying the proposed Class under the Federal rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B. Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

C. Declaring that Defendants have committed the violations of the law alleged herein;

D. Providing for any and all injunctive relief the Court deems appropriate;

E. Awarding statutory damages in the maximum amount for which the law provides;

F. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in any amount that the Court or jury will determine, in accordance with applicable law;

G. Providing for any and all equitable monetary relief the Court seems appropriate;

H. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I. Awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

J. Awarding pre- and post-judgment interest to the extent the law allows; and

K. For such further relief as this Court may deem just and proper.

Dated: July 12, 2026 Respectfully Submitted,

By: ______________________

Shalini Dogra, Esq.
*shalini@dogralawgroup.com*
Dogra Law Group PC
2219 Main Street, Unit 239
Santa Monica, CA 90405
Telephone: (747) 234-6673
Facsimile: (310) 868-0170
*Attorneys for Plaintiff*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 12, 2026 Respectfully Submitted,

By: ______________________

Shalini Dogra, Esq.
*shalini@dogralawgroup.com*
Dogra Law Group PC
2219 Main Street, Unit 239
Santa Monica, CA 90405
Telephone: (747) 234-6673
Facsimile: (310) 868-0170
*Attorneys for Plaintiff*